# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

NORMA DE LEON,

    **Plaintiff,**

    v.                                        **Case No. 17-CV-972**

NANCY A. BERRYHILL,
**Acting Commissioner of Social Security,**

    **Defendant.**

## DECISION AND ORDER

Norma De Leon seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income under the Social Security Act, 42 U.S.C. § 405(g). For the reasons stated below, the Commissioner's decision is reversed and the case is remanded for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

## BACKGROUND

De Leon was involved in a motor vehicle accident in August 2009. De Leon filed an application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income alleging disability beginning on April 17, 2012 due to chronic sinusitis, back injury, depression, migraines, leg and arm numbness, vertigo, and asthma. (Tr. 280.) The claim was denied initially and on reconsideration. A hearing was held before an Administrative Law Judge ("ALJ") on July 23, 2015. (Tr. 38.) De Leon testified at the hearing, as did John Reiser, a vocational expert ("VE"), and De Leon's daughter, Selena De Leon. (*Id.*)

In a written decision issued September 25, 2015, the ALJ found that De Leon had the severe impairments of degenerative disc disease and fibromyalgia. (Tr. 20.) The ALJ found that De Leon did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "listings"). (Tr. 22.) The ALJ found De Leon had the residual functional capacity ("RFC") to perform the full range of light work as defined by the regulations. (*Id.*)

The ALJ found De Leon was capable of performing her past relevant work as a tax preparer (Tr. 27); however, the ALJ alternatively found that given De Leon's age, education, work experience, and RFC, other jobs existed in significant numbers in the national economy that De Leon could perform (Tr. 28). As such, the ALJ found De Leon was not disabled from April 17, 2012 through the date of the decision (September 25, 2015). (Tr. 28.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied the plaintiff's request for review. (Tr. 1–5.)

## DISCUSSION

### 1.    *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ

must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

### 2. *Application to this Case*

De Leon alleges a multitude of errors with the ALJ's decision. I agree the ALJ's decision is fatally flawed—so flawed, in fact, that it is surprising the Commissioner chose to defend it. Rather than addressing each and every error De Leon alleges, I will outline the most glaring errors that infect the entire decision.

The ALJ's first error occurs at step two in determining De Leon's severe impairments. The ALJ found that De Leon's migraine headaches were non-severe, reasoning that while the record supports that De Leon suffers from multiple headaches per week, sought multiple emergency room and treatment visit for headaches, and took migraine medication, the objective evidence did not support the severity of her condition. (Tr. 20.) The ALJ further found that De Leon informed treating providers in February 2012 that her headaches did not affect her work or activities of daily living and stated in March 2013 that she had not had a headache for approximately one year. (*Id.*)

"In order for an impairment to be considered severe at this step of the process, the impairment must significantly limit an individual's ability to perform basic work activities. If the evidence indicates that an impairment is a slight abnormality that has no more than a minimal effect on an individual's ability to work, then it is not considered severe for Step 2 purposes." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). The ALJ's rationale for determining De Leon's migraines are non-severe rests on multiple misstatements of the records and cherry-picking of the evidence.

To begin, one of the primary reasons the ALJ discredits De Leon's allegations of disabling symptoms from migraines is because the objective evidence did not support the severity or frequency of her condition. (Tr. 20.) Specifically, diagnostic imaging of her head was unremarkable. However, a lack of medical evidence alone is an insufficient reason to discredit testimony. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Even though diagnostic imaging of De Leon's head proved unremarkable, multiple treating providers noted her long history of migraines and treated her accordingly. In the case of migraines, diagnostic imaging may be used to rule out other possible causes of the pain (such as tumors, brain damage, etc); however, absent something more severe causing the migraines, diagnostic imaging may say little to nothing about the severity of one's migraine pain.

Further, the ALJ does not consider the objective evidence in the record that does support the severity of her headaches. The record indicates that De Leon has minor posterior disc bulging without mass effect on the cord involving the C3-4 through the C6-7 levels, as well as a small right paracentral inferior disc extrusion with a visible annular tear/fissure at the C6-7 level. (Tr. 1675–76.) While the ALJ focuses on the words "small" and "minor" from this report (Tr. 24), multiple providers noted that De Leon's chronic neck pain contributes to her headaches (Tr. 1288, 1675, 1820). In fact, her treating doctor, Dr. Michael McNett, stated on August 13, 2012 regarding De

Leon's migraines that "[s]tudies have shown that the myofascial pain of the head and neck can significantly increase the probability of migraine and she has this extensively." (Tr. 507.)

The ALJ also found De Leon's migraines non-severe because she informed treating providers in February 2012 that her headaches did not affect her work or activities of daily living and indicated in March 2013 that she had not had a headache for approximately one year. (Tr. 20.) In the February 2012 record (which preceded her alleged onset date), De Leon noted that her headaches had recently been increasing in both severity and frequency. While this single record stated that the headaches did not affect her work attendance or other daily activities, subsequent records after her alleged onset date (unconsidered by the ALJ) indicate her headaches were affecting her work and activities of daily living. For example, on July 20, 2012, De Leon told her treating nurse practitioner, Janice Gregory, that the pain from her recurring migraines and body aches was so severe that she could not even stand at the stove and stir something. (Tr. 483.) Or on March 22, 2013, De Leon told her physical therapist that she had a migraine lasting multiple days and was unable to take care of her household due to the nausea and pain. (Tr. 853.) Other records indicate similar limitations due to headache pain. (Tr. 617–18, 896.)

Regarding the March 18, 2013 record, De Leon did not state that she had not had a headache for approximately one year. (Tr. 20.) Rather, De Leon stated that "the last headache similar to her previous headache was 1 year ago, however, this current headache is worse." (Tr. 783.) In other words, De Leon stated that she had not had a headache *similar* in severity for one year. This is consistent with the records, which show De Leon reported multiple migraines headaches between March 2012 and March 2013. (Tr. 408, 435, 483, 507, 561, 618, 682, 728.) Thus, the ALJ's statement that De Leon had gone as much as a year between treatment visits for migraines is simply inaccurate.

The ALJ also found that De Leon denied deficits in her activities of daily living, citing to two records. (Tr. 20, 1295–96, 1887.) Both of these records are from visits where De Leon was treated for sinusitis. It is highly probable that her statement that she was having no problems with activities of daily living related to the sinusitis, not the headaches. This is especially likely given the multiple records indicating problems with activities of daily living due to headaches, cited above. For these reasons, the ALJ's finding that De Leon's migraines are non-severe is in error.

Because the ALJ must consider both severe and non-severe impairments in assessing the RFC, 20 C.F.R. § 1545(a)(2), errors at step two are harmless if the ALJ accounted for the non-severe impairments in setting the RFC, *Ramos v. Astrue*, 674 F. Supp. 2d 1076, 1091 (E.D. Wis. 2009). The problem in this case, however, is that the ALJ found De Leon could perform the full range of light work without limitations. Beyond the ALJ's conclusory statement that in finding De Leon could perform light work, he considered her severe and non-severe impairments, her subjective reports of pain, and her reported side effects from medications (Tr. 24), it is unclear how he factored in her limitations from her migraine headaches. For example, the record supports that her migraines cause nausea, vomiting, photophobia, and phonophobia. (Tr. 781, 1190, 1205, 1221, 1975–76.) How were these limitations considered in the RFC?

The ALJ's error in considering De Leon's migraines a non-severe impairment dovetails into further problems with the RFC assessment. The ALJ generally found De Leon's allegations of disabling pain not credible because he found she exaggerated her limitations on her activities of daily living. (Tr. 25.) The ALJ found that her hearing testimony was in "stark contrast" to her statements to treating providers that she had no deficits in her activities of daily living, again citing the two records from her treatment for sinusitis. (Tr. 21.) In fact, these two records are the backbone of the ALJ's conclusion that De Leon exaggerated her hearing testimony, which generally detracted from

her overall credibility. (Tr. 25.) These two records are further used, at least in part, to discredit the medical source statements of her treating physical therapist Michelle Thompson and her treating nurse practitioner, Janice Gregory, both of who treated De Leon many times over the course of several years. (Tr. 25–26.) Those two records were used to discredit the multiple third party statements supporting De Leon. (Tr. 26.) Again, building a decision on such a shaky foundation causes the entire decision to crumble.

Proper consideration of De Leon's migraine headaches, starting at step two, will likely change the ALJ's entire analysis; therefore, I will not address the remainder of De Leon's arguments. I will, however, make a few points to provide the ALJ some guidance on remand. When considering De Leon's fibromyalgia, do not discount her allegations of disabling pain because of the lack of diagnostic imaging. (Tr. 24.) Fibromyalgia is not diagnosed or assessed through diagnostic imaging. Social Security Ruling 12-2p.

Further, there are multiple instances in which the ALJ cherry-picks the record. For example, the ALJ discredited Thompson's opinion because of De Leon's normal gait (Tr. 26), despite the fact the record indicates an antalgic or impaired gait on multiple occasions. (Tr. 1392, 1401, 1417, 1666, 1707, 1923.) The ALJ also discredited the alleged severity of De Leon's symptoms because of essentially normal physical examinations (i.e., normal strength, range of motion, coordination, sensation, balance) (Tr. 24), despite numerous record cites showing poor range of motion (Tr. 619, 1332, 1380, 1463, 1665, 1707), weakness (Tr. 620, 1397, 1664), and numbness and tingling in the extremities (Tr. 1038, 1051, 1060, 1069, 1081, 1094, 1114, 1143, 1397, 1664, 1933). On remand, the ALJ must take care to not selectively cite the medical records.

Finally, when considering De Leon's allegations of disabling pain, consider the fact that De Leon has multiple impairments causing her pain (i.e., fibromyalgia, degenerative disc disease,

migraines, knee problems), her pain is so severe that she is on multiple narcotic medications, including fentanyl patches (Tr. 1143), and she frequently presented to the emergency room due to pain, nausea, and/or vomiting (Tr. 781, 896, 913, 1138, 1143, 1154, 1164, 1173, 1181, 1190, 1197, 1205, 1214, 1220, 1982, 1990, 1997). In the face of these records, the ALJ must establish a clearer connection between his finding that De Leon's subjective complaints lack credibility and the evidence. Relying on diagnostic imaging and cherry-picking the record will not suffice. For all of these reasons, the Commissioner's decision is reversed and remanded for further proceedings.

## CONCLUSION

De Leon argues the ALJ erred in multiple respects in finding her not disabled. I agree the ALJ's decision is replete with errors, the most egregious of which is the failure to properly consider De Leon's migraine headaches. Upon remand, the ALJ must properly consider all of De Leon's impairments at each step of the analysis, consistent with the Social Security regulations and rulings.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 6th day of December, 2018.

BY THE COURT:

_s/Nancy Joseph_
NANCY JOSEPH
United States Magistrate Judge